# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

_____

THE UNITED STATES OF AMERICA

     *-vs-*

**DAVID PFEIFFER**
 (Counts 1-13), and
**THOMAS COLTON**
(Counts 1-9)

**November 2015 Grand Jury
(Impaneled 11/13/2015)**

**INDICTMENT**

**Violations:**
Title 18, United States Code,
Sections 1349, 1341, and 1014
(13 Counts and Forfeiture
Allegation)

### <u>INTRODUCTION</u>

#### The Grand Jury Charges That:

At all times relevant to this Indictment:

1.     Man O' Trees, Inc. (MOT) was incorporated in the State of New York in or

about 1998 and operated as a general construction contractor.  MOT maintained offices in

West Seneca, New York until in or about 2011 when MOT relocated to Buffalo, New York.

In or about August 2012, MOT relocated its offices to Salamanca, New York.

2.     Sue-Perior Concrete and Paving, Inc. (Sue-Perior) was incorporated in the

State of New York in or about 2003 and purportedly operated as a subcontractor and

general construction contractor.  Sue-Perior maintained offices at the same locations used

by, and during the same time periods as, MOT.

3.      Defendant, DAVID PFEIFFER (PFEIFFER), was the president and owner of MOT, and held a 100% equity interest in MOT.  Defendant PFEIFFER was the director and part-owner of Sue-Perior, holding a 33.3% equity interest in Sue-Perior.

4.      Defendant, THOMAS COLTON (COLTON), was the president and part-owner of Sue-Perior, holding a 66.6% equity interest in Sue-Perior.  COLTON was paid by Sue-Perior and MOT as a laborer.

**The Disadvantaged Business Enterprise Program**

5.      Disadvantaged Business Enterprise (DBE) was a label assigned to those businesses who were certified by a government agency as owned and controlled by socially and economically disadvantaged individuals who own at least 51% of the company.

6.      In 1980, the United States Department of Transportation (USDOT) issued regulations in connection with a program to increase the participation of minority and DBEs in federally-funded public construction projects.  Recipients of USDOT construction grants were required to establish a DBE program, pursuant to which they would set specific goals for the percentage of work to be awarded to DBEs and ensure that good faith efforts were made by general contractors to employ qualified DBE subcontractors.

7.      To be certified as a DBE, a company must have been owned and controlled by socially and economically disadvantaged individuals, who owned at least 51% of the company.  Additionally, the company must have been an independent business, one whose

viability did not depend on its relationship with another firm or firms; the company must have employed its own work force, owned the equipment necessary to perform its work, and been able to meet its financial obligations.  To undertake work as a DBE, a company must have been certified as a DBE in the state within which it seeks to perform work.

8.      General contractors were permitted to count toward the attainment of their DBE percentage goals only funds paid to DBEs that performed a "commercially useful function" in the execution of a contract.  Under the relevant rules and regulations, a DBE subcontractor performed a commercially useful function only where it: was responsible for the execution of the work of the contract; carried out its responsibilities by actually performing, managing, and supervising the work involved; and furnished the supervision, labor, and equipment necessary to perform its work.  The rules and regulations also expressly provided that a DBE did not perform a commercially useful function "if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of DBE participation."

## COUNT 1
**(Conspiracy to Commit Mail Fraud)**

**The Grand Jury Further Charges That:**

1.      The allegations of the Introduction are incorporated by reference and re-alleged as if fully set forth herein.

3

A.   **Object of the Conspiracy**

2.     Beginning in or about May 2009 and continuing until in or about 2013, in the Western District of New York, and elsewhere, the defendants, DAVID PFEIFFER and THOMAS COLTON, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to devise a scheme and artifice to defraud, among others, the USDOT, the NYSDOT, the City of Niagara Falls, New York, the Buffalo Urban Development Corporation (BUDC), and the Niagara Frontier Transportation Authority (NFTA), and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to place in authorized depositories for mail, to be sent and delivered by the Postal Service, matters and things and knowingly to cause to be delivered by mail according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, matter and things, in violation of Title 18, United States Code, Section 1341.

3.     The ultimate object of the conspiracy was for the defendants, DAVID PFEIFFER and THOMAS COLTON, to fraudulently obtain funds, in the form of government construction contract payments by falsely claiming that Sue-Perior could fulfill DBE percentage goals on such contracts on behalf of MOT.

B.   **Manner and Means of the Conspiracy**

4.     The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

4

5.      It was part of the conspiracy to defraud that on or about May 21, 2009, the defendants, DAVID PFEIFFER and THOMAS COLTON, filed, and caused to be filed, a fraudulent DBE application with the NFTA on behalf of Sue-Perior to obtain DBE certification.  Obtaining DBE certification for Sue-Perior allowed MOT to secure public works construction contracts by utilizing Sue-Perior to fulfill the DBE percentage goals on such contracts.  Obtaining DBE certification for Sue-Perior also enabled defendants PFEIFFER and COLTON and MOT and Sue-Perior to gain an unfair bidding advantage in securing such contracts.

6.      It was part of the conspiracy to defraud that, as the defendants PFEIFFER and COLTON well knew, the DBE application filed for Sue-Perior was false as to, among other things, information concerning who had authority over Sue-Perior, who had financial control of Sue-Perior, and whether Sue-Perior was completely independent from MOT and other businesses.  The application, by omission, misrepresented defendant PFEIFFER's role in Sue-Perior in that the business and financial interests defendant PFEIFFER held in Sue-Perior were intentionally omitted from the application to prevent the application from being disapproved.

7.      It was part of the conspiracy to defraud that, on or about July 9, 2010, on or about June 28, 2011, and on or about November 15, 2011, defendant COLTON continued to misrepresent COLTON's role in Sue-Perior by falsely signing NYSDOT DBE Certification Eligibility Affidavits indicating that COLTON maintained ownership,

management, and control of the operations of Sue-Perior.  The affidavits were approved by the NFTA.

8.     It was part of the conspiracy to defraud that defendants PFEIFFER and COLTON, and their companies, MOT and Sue-Perior, engaged in systematic fraud in connection with the DBE programs adopted by, among others, NYSDOT, the NFTA, the BUDC, and the City of Niagara Falls, New York.  The scheme typically worked as follows:

9.      It was part of the conspiracy to defraud that defendants PFEIFFER and COLTON caused Sue-Perior to enter into public construction subcontracts to perform an array of construction work.  As defendants PFEIFFER and COLTON well knew, Sue-Perior was itself incapable of completing the work the defendants contractually agreed to have Sue-Perior perform.  Among other things, Sue-Perior lacked any independent labor force; Sue-Perior's administrative work was completed in offices of MOT by MOT employees; and MOT laborers completed work that should have been completed by Sue-Perior employees.  Oftentimes, laborers received wages from both MOT and Sue-Perior for work done on the same project during the same work week.

10.     It was part of the conspiracy to defraud that defendants PFEIFFER and COLTON arranged to have MOT actually perform the work that Sue-Perior contracted to perform, with MOT providing all the significant labor, equipment, and supervision necessary to complete that work.

11.     It was further part of the conspiracy to defraud that defendants PFEIFFER and COLTON knew Sue-Perior lacked the independent financial wherewithal to pay its purported workers.  Sue-Perior would regularly bill MOT for its labor costs and MOT would then transfer funds to corporate bank accounts controlled by defendants PFEIFFER and COLTON, so defendant COLTON could issue paychecks to the workers.

12.     It was part of the conspiracy to defraud that, in some instances, MOT gave the false appearance that Sue-Perior was performing the work 1) by shifting its own workers to Sue-Perior's payroll; 2) by supervising the Sue-Perior workers as they performed the work; 3) by directly and indirectly furnishing the equipment necessary for Sue-Perior to perform the work; and 4) by paying Sue-Perior the funds necessary to meet the Sue-Perior payroll.

13.     It was part of the conspiracy to defraud that, on forms submitted by MOT to the relevant government agency or authority overseeing construction projects, defendants PFEIFFER and COLTON, falsely represented that Sue-Perior had performed the work Sue-Perior had subcontracted to complete, knowing that MOT would, in turn, claim DBE credit in connection with Sue-Perior's work.  MOT was caused to falsely represent to the relevant government agency or authority that Sue-Perior had performed the work and that MOT should receive DBE credit for Sue-Perior's work.

14.     It was part of the conspiracy to defraud that defendants PFEIFFER and COLTON and Sue-Perior, MOT and others, known and unknown, engaged in DBE fraud

in connection with the following public construction projects, specifically (a) New York State Route 104 Project; (b) Union Ship Canal Project; and (c) Gallagher Beach Project.

## New York State Route 104 Project

15.    It was further part of the conspiracy to defraud that in or about June 2009, MOT was awarded a contract to reconstruct New York State Route 104 in Niagara Falls, New York.  MOT was named the general contractor and the value of the contract was approximately $7.7 million.  In connection with the contract for the reconstruction of Route 104, the New York State Department of Transportation (NYSDOT) established an 11% DBE goal.

16.    It was further part of the conspiracy to defraud that the defendants PFEIFFER and COLTON caused MOT to falsely and fraudulently award an approximately $900,000 subcontract to Sue-Perior to purportedly perform construction services on the New York State Route 104 Project.

17.    It was further part of the conspiracy to defraud that, as defendants PFEIFFER and COLTON well knew, Sue-Perior did not provide a "commercially useful function" in connection with the New York State Route 104 Project.  On the contrary, MOT effectively performed the work it had purportedly subcontracted to Sue-Perior, and the defendants caused MOT and Sue-Perior to create the appearance that Sue-Perior had done commercially useful work on the project.

8

18.     It was further part of the conspiracy to defraud that, as defendants PFEIFFER and COLTON well knew, Sue-Perior, lacked the financial ability to perform the construction work necessary on the New York State Route 104 Project.

19.     It was further part of the conspiracy to defraud that defendants PFEIFFER and COLTON caused MOT to falsely and fraudulently report to the City of Niagara Falls that MOT had paid Sue-Perior approximately $881,878.22 related to the Route 104 project when in truth and as the defendants knew, MOT had only transferred approximately $499,925.92 to Sue-Perior to purportedly fulfill MOT's DBE requirements.

**Union Ship Canal Project**

20.     It was further part of the conspiracy to defraud that in or about December 2009, MOT was awarded a contract to construct "open space" facilities near the Union Ship Canal in Buffalo, New York.  The project involved the construction of a pedestrian and bicycle path and watercraft facilities with on-site trailhead parking.  MOT was named the general contractor and the value of the contract was approximately $6.4 million.   In connection with the Union Ship Canal contract, the NYSDOT established a 9% DBE goal.

21.     It was further part of the conspiracy to defraud that the defendants PFEIFFER and COLTON caused MOT to falsely and fraudulently award an approximately $584,000 subcontract to Sue-Perior to purportedly perform construction services on the Union Ship Canal Project.

9

22.     It was further part of the conspiracy to defraud that, as defendants PFEIFFER and COLTON, well knew, Sue-Perior did not provide a "commercially useful function" in connection with the Union Ship Canal Project.   To the contrary, MOT effectively performed the work it had subcontracted to Sue-Perior, with the defendants PFEIFFER and COLTON causing MOT and Sue-Perior to create the appearance that Sue-Perior had done commercially useful work on the project.

23.     It was further part of the conspiracy to defraud that, as defendants PFEIFFER and COLTON well knew, Sue-Perior lacked the financial ability to perform the construction work necessary on the Union Ship Canal Project.

24.     It was further part of the conspiracy to defraud that defendants PFEIFFER and COLTON caused MOT to falsely and fraudulently report to the BUDC that MOT paid Sue-Perior approximately $584,000 related to the Union Ship Canal project, when in truth and as the defendants knew, MOT had only transferred approximately $345,600 to Sue-Perior related to this contract to purportedly fulfill MOT's DBE requirements.

**Gallagher Beach Project**

25.     It was further part of the conspiracy to defraud that in or about March 2010, MOT was awarded a contract for the improvement of the Gallagher Beach Pavilions and Times Beach Boardwalk in Buffalo, New York.   MOT was named the general contractor and the value of the contract was approximately $1.4 million.   In connection with the Gallagher Beach contract, the NYSDOT established a 9% DBE goal.

26.     It was further part of the conspiracy to defraud that the defendants PFEIFFER and COLTON caused MOT falsely and fraudulently to award an approximately $128,686.79 subcontract to Sue-Perior to purportedly perform construction services on the Gallagher Beach Project.

27.     It was further part of the conspiracy to defraud that, as the defendants PFEIFFER and COLTON well knew, Sue-Perior did not provide a "commercially useful function" in connection with the Gallagher Beach Project.   To the contrary, MOT effectively performed the work it had subcontracted to Sue-Perior, with the defendants PFEIFFFER and COLTON causing MOT and Sue-Perior to create the appearance that Sue-Perior had done commercially useful work on the project.

28.     It was further part of the conspiracy to defraud that, as defendants PFEIFFER and COLTON well knew, Sue-Perior lacked the financial ability to perform the construction work necessary on the Gallagher Beach Project.

29.     It was further part of the conspiracy to defraud that defendants PFEIFFER and COLTON caused MOT to falsely and fraudulently report to the NYSDOT that MOT had awarded a contract valued at approximately $128,686.79 to Sue-Perior to fulfill MOT's DBE requirements on the Gallagher Beach project.  Defendants PFEIFFER and COLTON further caused MOT to report to the NYSDOT that MOT had paid Sue-Perior approximately $84,485.55 related to the Gallagher Beach contract when in truth and as the defendants knew, MOT had made no payments to Sue-Perior related to this project.

**C.**     <u>**Mailings In Execution of the Conspiracy to Defraud**</u>

30.     It was further part of the conspiracy to defraud that, for the purpose of executing the scheme and artifice, defendants PFEIFFER and COLTON, on or about the dates set forth below, did place in authorized depositories for mail, to be sent and delivered by the Postal Service, matters and things and did knowingly cause to be delivered by mail according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, matter and things including, among others, those set forth below:

| DATE | PROJECT | SENDER | RECIPIENT | DESCRIPTION |
|------|---------|--------|-----------|-------------|
| 01/03/2011 | NYS Route 104 | City of Niagara Falls | NYSDOT | Sponsor's Payment Request |
| 02/17/2012 | NYS Route 104 | City of Niagara Falls | NYSDOT | Sponsor's Payment Request |
| 09/24/2012 | NYS Route 104 | City of Niagara Falls | NYSDOT | Sponsor's Payment Request |
| 03/14/2011 | Union Ship Canal | BUDC | NYSDOT | Sponsor's Payment Request |
| 08/26/2011 | Union Ship Canal | BUDC | NYSDOT | Sponsor's Payment Request |
| 03/14/2012 | Union Ship Canal | BUDC | NYSDOT | Sponsor's Payment Request |
| 09/20/2011 | Gallagher Beach | New York State Treasury | MOT | Check Payment |
| 11/29/2011 | Gallagher Beach | New York State Treasury | MOT | Check Payment |
| 12/30/2011 | Gallagher Beach | New York State Treasury | MOT | Check Payment |

**All in violation of Title 18, United States Code, Section 1349.**

## COUNTS 2 through 9
### (Mail Fraud)

**The Grand Jury Further Charges That:**

1. The allegations of the Introduction and Count 1 are incorporated herein by reference.

2. Beginning in or about May 2009 and continuing until in or about 2013, in the Western District of New York, and elsewhere, the defendants, DAVID PFEIFFER and THOMAS COLTON, did devise, and intend to devise, a scheme and artifice to defraud, among others, the USDOT, the NYSDOT, the City of Niagara Falls, New York, the Buffalo Urban Development Corporation (BUDC), and the Niagara Frontier Transportation Authority (NFTA) and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

3. On or about the dates set forth below, for the purpose of executing such scheme and artifice, and attempting to do so, the defendants, DAVID PFEIFFER and THOMAS COLTON, did place in authorized depositories for mail, to be sent and delivered by the Postal Service, matters and things set forth below, and did knowingly cause to be delivered by mail according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, matter and things set forth below:

| COUNT | DATE | PROJECT | SENDER | RECIPIENT | DESCRIPTION |
|---|---|---|---|---|---|
| 2 | 2/17/2012 | NYS Route 104 | City of Niagara Falls | NYSDOT | Sponsor's Payment Request |
| 3 | 9/24/2012 | NYS Route 104 | City of Niagara Falls | NYSDOT | Sponsor's Payment Request |

| COUNT | DATE | PROJECT | SENDER | RECIPIENT | DESCRIPTION |
|-------|------|---------|--------|-----------|-------------|
| 4 | 3/14/2011 | Union Ship Canal | BUDC | NYSDOT | Sponsor's Payment Request |
| 5 | 8/26/2011 | Union Ship Canal | BUDC | NYSDOT | Sponsor's Payment Request |
| 6 | 3/14/2012 | Union Ship Canal | BUDC | NYSDOT | Sponsor's Payment Request |
| 7 | 9/20/2011 | Gallagher Beach | New York State Treasury | MOT | Check Payment |
| 8 | 11/29/2011 | Gallagher Beach | New York State Treasury | MOT | Check Payment |
| 9 | 12/30/2011 | Gallagher Beach | New York State Treasury | MOT | Check Payment |

**All in violation of Title 18, United States Code, Sections 1341 and 2.**

**COUNTS 10 through 13**
**(False Statement to Financial Institution)**

**The Grand Jury Further Charges That:**

On or about and between on or about the dates set forth below, in the Western District of New York, the defendant DAVID PFEIFFER, did knowingly make material false statements for the purpose of influencing the action of Five Star Bank, a financial institution as that term is defined pursuant to Title 18, United States Code, Section 20(1), with deposits insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, and loan, and a change and extension of the same, by renewal, deferment of action, and otherwise, in that the defendant did make false statements as to his ownership, and the value, of the property set forth below in the documents set forth below:

| COUNT | DATE | LOAN | DOCUMENT | FALSE STATEMENTS |
|---|---|---|---|---|
| 10 | 4/27/2009 - 5/13/2009 | Line of Credit renewal for MOT and Sue-Perior | Personal Financial Statement | Ownership and value of property located at 87380 Overseas Highway, Islamorada, Florida 33036 |
| 11 | 12/16/2010 - 2/14/11 | Line of Credit renewal for MOT and Sue-Perior | Personal Financial Statement | Ownership and value of property located at 87380 Overseas Highway, Islamorada, Florida 33036 |
| 12 | 2/17/2012 | Line of Credit renewal for MOT and Sue-Perior | Personal Financial Statement | Ownership and value of property located at 87380 Overseas Highway, Islamorada, Florida 33036 |
| 13 | 10/18/2012 | Line of Credit renewal for MOT and Sue-Perior | Personal Financial Statement | Ownership and value of property located at 87380 Overseas Highway, Islamorada, Florida 33036 |

**All in violation of Title 18, United States Code, Section 1014.**

## FIRST FORFEITURE ALLEGATION
(Proceeds from Mail Fraud and Conspiracy)

The Grand Jury Alleges that:

1.      The allegations of the Introduction and Counts 1 through 9 are incorporated by reference and re-alleged as if fully set forth herein.

2.      As a result of their conviction of Counts 1 through 9 of the Indictment or any one of those Counts, the defendants, DAVID PFEIFFER and THOMAS COLTON, shall

forfeit to the United States any property, real or personal, which were properties derived from proceeds traceable to an offense of conviction including, but not limited to, the following:

**MONETARY JUDGMENT**

The sum of THREE MILLION, FIVE HUNDRED AND ONE THOUSAND AND SEVENTY THREE dollars ($3,501,073.00) in United States Currency which will serve as a lien against the defendant's property, wherever situated, with interest to accrue at the prevailing rate per annum until fully satisfied in the event this amount is not located.

**INTEREST IN REAL PROPERTY**

The sum of ONE HUNDRED EIGHTY THOUSAND FIVE HUNDRED AND FOUR DOLLARS AND TWENTY-THREE CENTS ($180,504.23) derived from the sale of the real property and premises known as 201 Ganson Street, Buffalo, New York.

**SUBSTITUTE ASSETS**

If any of the property described above, as a result of any act or omission of a defendant;

1.    cannot be located upon the exercise of due diligence;

2.    has been transferred or sold to, or deposited with, a third party;

3.    has been placed beyond the jurisdiction of the court;

4.    has been substantially diminished in value; or

5.    has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of

the above referenced property, including but not limited to, the following property:

a. 7951 Hunters Creek Road, Holland, New York as described in the Erie County Clerk's Office, Book of Deeds 11116 at Page 2097.

b. 141 Ocean Drive, Tavernier, Florida, as described in the Monroe County Clerk's Office, Book of Deeds 2097 at Page 2042.

c. 87380 Overseas Highway, Islamorada, Florida, as described in the Monroe County Clerk's Office, Book of Deeds 2096, Page 1990.

d. 78 Lotus Bay Road, Irving, New York as described in the Erie County Clerk's Office, Book of Deeds 10988 at Page 9254.

e. Real property located on Sullivan Hollow Extension, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 14973 at Page 9001.

f. Real property located on Sullivan Hollow Extension, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 13936 at Page 7001.

g. Real property located on Sullivan Hollow Extension, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 10771 at Page 4001.

h. Real property located at 6000 Sullivan Hollow Road and Sullivan Hollow Extension (Off), Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 10331 at Page 2002.

i. Real property located at 6089 Sullivan Hollow Road, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 905 at Page 303.

j. Unit 21N, Phase III, Bimini Sands Condominium, South Bimini, The Bahamas, as found in the Commonwealth of the Bahamas Registrar General's Department recorded in book 10852, pages 152 to 166.

k. 752 Wildwood Avenue, Salamanca, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 1836 at Page 8002.

17

**All pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21 United States Code, Section 853(p).**

## SECOND FORFEITURE ALLEGATION
(Proceeds of False Statements to Financial Institution)

**The Grand Jury Further Alleges That:**

1.      The allegations of the Introduction and Counts 10 through 13 are incorporated by reference and re-alleged as if fully set forth herein.

2.      As a result of his conviction of Counts 10 through 13 of the Indictment or any one of those Counts, the defendant, DAVID PFEIFER,  shall forfeit to the United States any property constituting or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant;

1.      cannot be located upon the exercise of due diligence;

2.      has been transferred or sold to, or deposited with, a third party;

3.      has been placed beyond the jurisdiction of the court;

4.      has been substantially diminished in value; or

5.      has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of

the above referenced property, including but not limited to, the following property:

a.  7951 Hunters Creek Road, Holland, New York as described in the Erie County Clerk's Office, Book of Deeds 11116 at Page 2097.

b.  141 Ocean Drive, Tavernier, Florida, as described in the Monroe County Clerk's Office, Book of Deeds 2097 at Page 2042.

c.  87380 Overseas Highway, Islamorada, Florida, as described in the Monroe County Clerk's Office, Book of Deeds 2096, Page 1990.

d.  78 Lotus Bay Road, Irving, New York as described in the Erie County Clerk's Office, Book of Deeds 10988 at Page 9254.

e.  Real property located on Sullivan Hollow Extension, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 14973 at Page 9001.

f.  Real property located on Sullivan Hollow Extension, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 13936 at Page 7001.

g.  Real property located on Sullivan Hollow Extension, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 10771 at Page 4001.

h.  Real property located on 6000 Sullivan Hollow Road and Sullivan Hollow Extension (Off), Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 10331 at Page 2002.

i.  Real property located on 6089 Sullivan Hollow Road, Killbuck, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 905 at Page 303.

j.  Unit 21N, Phase III, Bimini Sands Condominium, South Bimini, The Bahamas, as found in the Commonwealth of the Bahamas Registrar General's Department recorded in book 10852, pages 152 to 166.

k.  752 Wildwood Avenue, Salamanca, New York, as described in the Cattaraugus County Clerk's Office, Book of Deeds 1836 at Page 8002.

**All pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A) and Title 21 United States Code, Section 853(p).**

DATED:  Buffalo, New York, March 1, 2016.

WILLIAM J. HOCHUL, JR.
United States Attorney

BY:   S/RUSSELL T. IPPOLITO, JR.
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5843
rippolito@usdoj.gov

A TRUE BILL:


S/FOREPERSON